IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ALPHONSA MURPHY, ) | CIVIL ACTION 4:04-22160-GRA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits (DIB) on August 5, 2002, alleging inability to work since July 22, 2002, (Tr. 60-62), due to high blood pressure, gout in his right ankle, arthritis in his left hand and cannot see clearly (Tr. 66). Plaintiff's claim was denied initially, and upon reconsideration (Tr. 33-37, 40-42). Following an administrative hearing on March 11, 2004 (Tr. 281-323), the Administrative Law Judge (ALJ), Gregory Wilson, found in a decision dated June 18, 2004 (Tr. 16-26), plaintiff was not disabled (Tr. 25-26). Because the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7), that decision

became the final decision of the Commissioner for purposes of judicial review. Plaintiff sought review of the Commissioner's decision in a complaint filed on September 9, 2004, pursuant to Section 205(g) of the Act.

## II. FACTUAL BACKGROUND

Plaintiff, Alphonsa Murphy, was born December 24, 1944, and was 59 years old at the time of the ALJ's decision. Plaintiff has an a high school education, and past work experience as a maintenance worker for the South Carolina Highway Department for Thirty-four (34) years. (Tr. 67, 287-290).

## III. HEARING DECISION

In the decision of June 18, 2004, the ALJ found the following:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's arthritis in left hand, gout in his feet, problems with his right knee, a recurrent abscess in the buttocks area, back pain, high blood pressure, and shortness of breath are considered "severe" based on the requirements in the Regulations 20 CFR §404.1520(b). Additionally, the claimant's poor vision and blood problems are considered non-severe because of the lack of consistent medication and medical treatment.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity to perform medium work that consisted of lifting and carrying 50 pounds occasionally and 25 pounds frequently. Standing and walking for six-hours in an eight-hour workday, and sitting for the remaining two-hours in an eight-hour workday.

7. The claimant is unable to perform his past relevant work (20 CFR §§ 404.1565).

8. The claimant is an "individual of advanced age" (20 CFR § 404.1565).

9. The claimant has a "high school education" (20 CFR § 404.1564).

10. The vocational expert, Dr. Brabham testified that the claimant had transferable skills from his past relevant work (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform less than full range of medium work (20 CFR § 404.1567).

12. Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.14.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(g)).

(Tr. 25-26).

## IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by

the plaintiff and plaintiff did not set out a summary of the medical records in his memorandum. Therefore, the undisputed relevant medical evidence as stated by the defendant is set forth herein.

On April 18, 2000, plaintiff presented to the Carolinas Hospital System following complaints of hypertensive crisis and angina. He reported that he had seen the nurse at his place of employment during previous days, but did not follow her instructions to follow-up with a physician. Plaintiff also reported a history of alcohol abuse. Physical examination showed that plaintiff's lungs were clear to percussion and auscultation, and that he had regular heart rhythm without murmurs, lifts, heaves, or gallops. He demonstrated the absence of gross extremity deformities or edema. He also had normal motor strength, intact cranial nerves, and symmetrical reflex (Tr. 95).  A chest x-ray showed mild cardiomegaly, and the absence of any active heart disease (Tr. 99). An echocardiogram showed normal heart chamber sizes, tricuspid, and pulmonic valve areas; good aortic valve excursion; and the absence of mitral stenosis, or thrombus (Tr. 100). Toney Graham, Jr., M.D., found hypertension under poor control due to poor medication compliance, and diagnosed  hypertension, angina, folic acid deficiency secondary to alcohol abuse, and mild liver dysfunction due to alcohol abuse (Tr. 94). Dr. Graham prescribed Vasoretic, Folic Acid, Colchicine, and Indocin.

On June 11, 2001, plaintiff again presented to the Carolinas Hospital System for complaints of acute hernia (Tr. 104). Dr. Graham diagnosed left inguinal hernia, hypertension, and alcohol abuse, and referred plaintiff to Edward Floyd, M.D., for surgical consultation (Tr. 105). On June 12, 2001, plaintiff presented to Dr. Floyd, who verified left inguinal hernia and recommended plaintiff for surgery (Tr. 102-03).  Dr. Floyd performed the procedure this same day, which plaintiff tolerated well (Tr. 102). On June 13, 2001, Dr. Floyd prescribed Darvocet for pain, and discharged plaintiff from care (Tr. 101).

On May 16, 2002, plaintiff complained to Dr. Graham of right foot pain, which was assessed as gout (Tr. 250). On September 27, 2002, plaintiff complained of right knee mass. Dr. Graham recommended a MRI (Tr. 164). On October 4, 2002, a right knee MRI showed plaintiff had a cystic lesion (Tr. 162).

On October 7, 2002, plaintiff complained of hypertension, syncope, and right-sided weakness (Tr. 112-13). Dr. Graham found clear lungs, normal cardiac functioning, and the absence of edema or spinal and extremity deformities (Tr. 112). He found right-sided weakness and degenerative joint changes throughout, and assessed hypertension (Tr. 112). A chest x-ray showed normal heart size and the absence of active lung disease (Tr. 117). A head CT scan showed moderate diffuse cerebral atrophy (Tr. 118). A carotid duplex exam showed the absence of hemodynamically significant lesions (Tr. 114). A bone marrow biopsy indicated polycythemia[1] but the pathologist stated that the findings did not fully meet the criteria for polycythemia vera. (Tr. 125).

On October 12, 2002, Dr. Graham noted symptoms consistent with polycythemia, and diagnosed hypertension, transient ischemic attack (TIA), polycythemia, atherosclerotic and cardiovascular disease, osteoarthritis, and alcohol abuse. Plaintiff was discharged with prescriptions for Lotrel and Folic Acid (Tr. 110).

On November 19, 2002, plaintiff presented to consultative examining physician, Arthur Wilkoszewski, M.D. (Tr. 128-30). Plaintiff complained that he fell down at work due to high blood pressure, and experienced leg pain due to gout, and syncope (Tr. 128). He reported that he

---

[1] A myeloproliferative disorder characterized by an increase of red blood cell mass and hemoglobin concentration. Symptoms include weakness, fatigue, blood clotting, vertigo, tinnitus, irritability, flushing of face, extremity pain, and increased bone marrow cellularity. Taber's Cyclopedic Medical Dictionary (Taber's) (19th ed. 2001).

smoked (Tr. 129). He also reported that he consumed alcohol daily in the past, but had quit five months prior to the examination (Tr. 129). Dr. Wilkoszewski found normal lung and cardiac functioning (Tr. 129). Plaintiff's right knee showed swelling secondary to a cyst, but there was good range of motion in the joint (Tr. 129). Plaintiff could get on and off the examining table, and ambulated well without an assistive device, although he had some difficulty standing on his toes and heels, and needed support to maintain balance (Tr. 130). He could also slowly squat, but needed help rising from the squatting position (Tr. 130). Dr. Wilkoszewski diagnosed hypertension, exertional shortness of breath, left hand weakness, and recurrent gout and syncopal episodes by history (Tr. 130).

On January 7, 2003, plaintiff complained of perirectal abscess (Tr. 142). Dr. Graham found that he had clear lungs, regular heart rate and rhythm, swollen right knee with right lateral knee mass, and bilateral knee crepitation, which was greatest on the right (Tr. 142). Dr. Graham found grossly intact cranial nerves, and equal and symmetrical bilateral motor strength (Tr. 142). He diagnosed perirectal abscess, history of alcohol abuse, macrocytic anemia, and right knee mass (Tr. 141-42).

On January 9, 2003, plaintiff consulted David M. Anderson, M.D., regarding his perirectal abscess (Tr. 150-51). Plaintiff reported that he smoked ½ to one pack of cigarettes daily, and drank alcohol heavily in the past (Tr. 150). Dr. Anderson found normal heart rate and rhythm, clear lungs, and perirectal abscess (Tr. 150). He then performed incision and drainage of the abscess (Tr. 145, 151).

On January 10, 2003, Alfred G. Dawson, M.D., examined plaintiff for his complaints of

knee swelling (Tr. 148-49). A right knee x-ray indicated maintained knee joint space, normal patella, and the absence of fracture or dislocation (Tr. 152). Dr. Dawson found a mass in plaintiff's right knee, which caused pain upon forward flexion (Tr. 148). He diagnosed a right knee tumor, which he planned to surgically remove (Tr. 148).

On January 11, 2003, Dr. Dawson found that plaintiff's knee swelling was unchanged. (Tr. 147).

On February 5, 2003, Dr. Graham indicated that he treated plaintiff since October 7, 2002, and that plaintiff was unable to work (Tr. 257).

On May 16, 2003, plaintiff presented to Dr. Floyd, for follow-up to his complaints of perirectal abscess and right knee mass (Tr. 158). Dr. Floyd then excised plaintiff's right knee mass and perirectal abscess (Tr. 157).

On September 20, 2003, plaintiff again reported chest pain (Tr. 201). He stated that he continued to smoke cigarettes and consume alcohol (Tr. 201). Upon examination, he was alert and oriented, with clear lungs, intact cranial nerves, equal strength and reflexes, and the absence of cyanosis or edema (Tr. 201). James Thomy, M.D., administered gastrointestinal cocktail, which relieved plaintiff's chest pain (Tr. 202). Plaintiff reported that he had not taken his Lotrel or blood pressure medicine that day (Tr. 203). Dr. Thomy diagnosed acute chest pain, hypoglycemia, and elevated blood pressure (Tr. 203). He instructed plaintiff to eat regularly, avoid alcohol, and take Tylenol or Motrin for fever or pain (Tr. 203).

Subsequent to the ALJ's decision, plaintiff submitted records to the Appeals Council from plaintiff's treating specialist, Dr. Sitti. Dr. Sitti first examined plaintiff on March 9, 2004, and arranged for a blood volume study and red cell mass to be performed at MUSC. On May 14, 2004,

based on the red cell mass test performed at MUSC, Dr. Sitti's impression was polycythemia vera and stated that once the medication lowers his hemoglobin, his blood pressure should be better. On June 18, 2004, Dr. Sitti examined plaintiff with impression of polycythemia vera and acute gouty attack "probably from hyperuricemia secondary to red cell destruction from Hydrea (the medication prescribed for his condition)."   (Tr. 259-280).

## V.  PLAINTIFF'S SPECIFIC ARGUMENTS

The plaintiff argues that additional records of Dr. Sitti were submitted to the Appeals Council revealing that plaintiff has polycythemia vera also known as erythremia. (Tr. 259-280). Plaintiff contends that he had just begun to see Dr. Sitti prior to the date of the hearing and that his treating physician, Dr. Graham, had suspected this condition but testing at that time did not confirm it. Plaintiff asserts that Dr. Sitti's records submitted to the Appeals Council were made a part of the record but were not considered by the Appeals Council. Thus, plaintiff requests that this case be remanded for consideration by the ALJ of Dr. Sitti's medical records which support Dr. Graham's determination that plaintiff is disabled.

Defendant asserts that the evidence submitted subsequent to the hearing would not have changed the ALJ's decision. Defendant contends that the evidence was duplicative. Defendant asserts that "Dr. Graham assessed polycythemia on October 12, 2002 (Tr. 110)."  (Defendant's brief). Therefore, defendant argues that there was not a reasonable possibility that Dr. Sitti's treatment notes would have changed the outcome of the ALJ's decision.

When evidence not considered by the ALJ is submitted to the Appeals Council and is incorporated into the record, the reviewing court must consider this evidence in determining whether

the Commissioner's decision is supported by substantial evidence. Hart v. Apfel, No. 98-2320. 1999 WL 365555, at *3 (4th Cir. June 7, 1999) [unpublished opinion]. However, in conducting its review, the District Court is to determine whether substantial evidence supports the Commissioner's decision, and in order to conduct such a review it is necessary to have some knowledge of the basis for that decision, especially when additional items of evidence were presented to the Appeals Council that the ALJ did not have before him. "A bald conclusion unsupported by reasoning or evidence, is generally of no use to a reviewing court." Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978)[published decision]. In the Jordan case, a coal miner was seeking benefits in a black lung disease claim. The claimant lost at the administrative hearing before the ALJ and appealed the decision to the administrative Appeals Council and submitted additional evidence. The Appeals Council stated only that the additional evidence had been considered and summarily affirmed the denial of benefits. The Fourth Circuit reversed the Appeals Council's decision in light of the inadequacy of the explanation given for rejection of the additional evidence submitted for its consideration. The Fourth Circuit stated:

> Several new items of medical evidence, not all of it favorable to Jordan, were submitted to this body . . . stating only that the additional evidence had been considered, the appeals council summarily affirmed the denial of benefits . . . Before we determine the substantiality of the evidence to support the administrative determination, we must first ascertain whether the Secretary has discharged his duty to consider all relevant evidence. A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious. This case is not within the exception. Moreover, conclusory administrative determination may conceal arbitrariness. To eliminate these problems, we held in Arnold v. Secretary, "that the Secretary, in determining an applicant's entitlement to black lung benefits, must consider all relevant evidence, including that accumulated after June 30, 1973, and must

>indicate explicitly that such evidence has been weighed and its weight." 567 F.2d at 259. We think the opinion of the appeals council, stating as it did only that the additional evidence had been considered, was plainly deficient under Arnold. The November, 1975 x-ray and the second physician's report sufficiently supported the existence of a qualifying disability to require that the Secretary explain why they were not persuasive. We therefore reverse and remand the case to the district court for the purpose of returning it to the Secretary with directions to give this claim adequate consideration and to articulate his conclusions with respect thereto.

(Jordan, 582 F.2d at 1334-1336).

There is contrary authority on this issue. In the case of Hollar v. Commissioner of the Social Sec. Admin. 194 F.3d 1304 (4th Cir. (N.C.)1999) [unpublished decision], the plaintiff sought review from the Appeals Council after the ALJ reached his decision denying her benefits. Hollar submitted additional evidence which the Appeals Council considered and found did not provide a basis for changing the ALJ's decision. Plaintiff then appealed complaining that the Appeals Council failed to consider and make explicit findings concerning the evidence submitted in support of her claim after the ALJ's decision. A panel of the Fourth Circuit held that "the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision." The Fourth Circuit referred to the applicable CFR, 20 C.F.R. § 404.970(b) (1999), which does not mandate that the Appeals Council give explicit reasons for its decision.

However, there has been a decision relevant to the issues in this case, Harmon v. Apfel, 103 F. Supp.2d 869 (D.S.C. 2000), by United States District Judge David C.Norton. In Harmon, the plaintiff sought judicial review of the Commissioner's decision and had submitted additional evidence to the Appeals Council not considered by the ALJ. The Appeals Council considered the

additional evidence but found it did not suffice as a basis for changing the ALJ's decision without stating its reason for its conclusion.

Quoting from Judge Norton's decision in Harmon, supra,

> The court must attempt to steer its analytical ship between the twin perils of Scylla and Charybdis[2]. The court is caught between trying to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of the ALJ. Specifically, in this modern-day version of the classic Greek tale, Scylla represents any violation of the Fourth Circuit's rule that when evidence not considered by the ALJ is submitted to the Appeals council and is incorporated into the record, the reviewing court must also consider this evidence in determining whether the Commissioner's decision is supported by substantial evidence. See Wilkins v. Secretary, Dep't of Health and Human Sevs., 953 F.2d 93, 96 (4th Cir. 1991). By attempting to adhere to such a rule when the Appeals Council fails to articulate the reasons why the new, additional evidence does not suffice as a basis for changing the ALJ's decision, this court is drawn perilously close to Charybdis, which represents any violation of the Fourth Circuit's rule that the Commissioner must indicate explicitly the weight of all relevant evidence because it is not within the province of a reviewing court to determine the weight of the evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). . . This court is not a soothsayer and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded the new, additional evidence presented to it. Unless the commissioner has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached

---

[2] In Homer's Odyssey, Odysseus and his men had to wage battle against monsters such as Scylla and Charybdis and overcome other apparently insurmountable obstacles during the course of their voyage. Scylla was a multi-headed female monster, personifying a dangerous rock on the Italian side of the Straits of Messina. Charybdis was a creature whose daily consumption of the sea created the whirlpool off the Northeastern coast of Sicily, in the Straits of Messina. Because these creatures lived opposite shores of a narrow strait, it was supposedly impossible to navigate away from one peril without falling prey to the other.

> are rational. Arnold v. Secretary of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

Judge Norton held that, quoted verbatim:

> In summary, although the Appeals Council's decision whether to grant or deny review of an ALJ's decision may be discretionary as well as unreviewable, and the regulations do not require the Appeals Council to articulate a reason for its decision not to grant review, a reviewing court cannot discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence when the Appeals Council considered evidence that the ALJ did not have the opportunity to weigh, and rejected that new, additional evidence without specifying a reason for rejecting it or explicitly indicating the weight given to the evidence.

Harmon at 873.

Judge Norton addressed the Hollar decision, previously noted herein, which is contrary to his position, in his Order stating that "Because this court is not convinced by the Hollar panel's perfunctory analysis, the court declines to follow the unpublished opinion." Id. at 872. Judge Norton noted that "by definition, an unpublished opinion is not binding precedent. See U.S. Ct. of App. 4th Cir. Rule 36(c)." Judge Norton remanded the Harmon case, under a sentence four remand, to the Commissioner to articulate and state reasons for his assessment of the additional evidence presented by the plaintiff. Judge Norton concluded this was necessary so that the District Court could properly determine whether the Commissioner's decision is supported by substantial evidence.

In this case, as noted, the plaintiff submitted records from her treating physician and specialist, Dr. Sitti, concluding that plaintiff does in fact have polycythemia vera based on tests performed at MUSC. Plaintiff first saw Dr. Sitti a few days before her administrative hearing. Defendant argues that this evidence is duplicative because Dr. Graham had already "assessed polycythemia on October 12, 2002 (Tr. 110)." However, a review of that medical note reveals that

"he did not meet criteria for polycythemia per the pathologist." (Tr. 110). Plaintiff's counsel attached a copy of the definition for erythremia (also known as polycythemia vera) which is defined as a chronic, slowly worsening, and usually fatal disease marked by an abnormal increase in the number of red blood cells. The symptoms are weakness, lassitude, loss of weight, headache, dizziness, digestive disturbances, shortness of breath, and a purplish discoloration of the face, ears, etc. The tongue has a bluish-red color. The spleen is greatly enlarged." (See attachment to plaintiff's brief from the Attorney's Dictionary of Medicine).

The Appeals Council did not state its reasons for concluding that the additional evidence, Dr. Sitti's records which tend to support Dr. Graham's opinion, failed to provide a basis for reversing the decision of the ALJ. The Appeals Council issued its decision stating a conclusion only. That procedure is arguably insufficient to enable a reviewing District Court "to discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence." Harmon, supra. As set forth, the Jordan decision, a published opinion, requires explicit findings by an Appeals Council in a black lung claim. The undersigned also notes that the Hollar decision (unpublished) and 20 C.F.R. § 404.970(b) does not require the Appeals Council to announce detailed reasons for its findings. However, in light of the Jordan decision and the analysis in Harmon, the undersigned finds Judge Norton's decision persuasive. Therefore, the undersigned recommends, based on the holdings in Harmon and Jordan, supra, as discussed above, that the plaintiff's case should be remanded under sentence four of 42 U.S.C. § 405(g) so that the Commissioner may indicate explicitly if the evidence was considered why the new, additional evidence does not suffice as a basis for changing the ALJ's decision. The Commissioner should consider the additional evidence and, if it finds that this additional evidence does not suffice as a

basis for changing the ALJ's decision, the Order should explicitly indicate the reason. The District Court will then be in a position to determine whether or not the Commissioner's decision is supported by substantial evidence. As the undersigned is recommending a remand as set forth above, further arguments of the plaintiff will not be addressed at this time because the undersigned cannot address whether or not there was substantial evidence to support the decision of the ALJ and the Appeals Council.

## VI.  CONCLUSION

Based on the above, the undersigned RECOMMENDS that the Commissioner's decision be REMANDED PURSUANT TO SENTENCE FOUR for further administrative action as set out herein.

Respectfully submitted,

Thomas E. Rogers, III
United States Magistrate Judge

August 11, 2005
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
&
The Serious Consequences of a Failure to Do So

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 USC § 636 and Fed. R. Civ P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n.3, 1992 U.S. Dist. LEXIS ® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S. Dist. LEXIS ® 3411 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made and the basis for such objections.** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied,* Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S. App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.) (party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *** We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating that 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S. App. LEXIS® 15,084 (8th Cir. 1989) ("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984) ("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S. App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina    29503**